Case number 21-37-64 Faburama Njai v. Merrick Garland. Argument not to exceed 15 minutes per side. Mr. Abrutin you may proceed for the petitioner. Good morning and may it please the court. Russell Abrutin on behalf of the petitioner Faburama Njai. The agency erred in denying the petitioner's unopposed motion to reopen where the DHS failed to serve a statutorily compliant notice to appear. And that failure carries two distinct consequences relevant to this matter. The first is that it requires the rescission of the in absentia removal order as the 5th and 9th Circuit have held post NIS Chavez. And second, the entry of that removal order did not trigger the stop time rule for cancellation of removal as the 9th and 7th Circuits have found. Time and again the BIA has tried to save the DHS from its failure to comply with the plain statutory language. And each time the Supreme Court has declined to defer. A lot of those cases apply in this context to your client because oft times these petitioners didn't receive their notice to appear and didn't know about the proceeding. But that doesn't characterize your client because he was attending these proceedings and I think he showed up at four different hearings and at some point the government missed sending him a notice to appear. But your client just went away and stopped participating in the process. And after about nine years when the Supreme Court I guess handed down this Pereira case, your client re-emerges and now he's asserting rights that he seemingly abandoned a long time ago. Just as in NIS Chavez and Pereira, Mr. Najai had actual notice. Pereira and NIS Chavez showed up to court. They knew they were supposed to be there. Mr. Najai went to court until he didn't. He knew he was supposed to be there. The issue is not whether he had actual or constructive notice, but whether the file, a statutorily compliant notice to appear as that is defined in 8 U.S.C. 1229 paragraph A-1, whether that failure carries certain consequences. And in Pereira, the Supreme Court held that it carries two consequences. One, the stop time rule is not triggered regardless of whether the individual actually knew they had to be in court. And two, because the in absentia statute draws on the same definitional statute that rescission is required. Why does the stop time rule apply to your client? Because your client stopped participating in the process. If your client had appealed adverse rulings and such, he could continue to take advantage of the stop time rule. But your client didn't do that. He just abandoned the process. And now he's back claiming all these rights. Your client stopped interacting with the immigration apparatus in 2010. And then, and he was attending all these hearings and things. Then he reemerges nine years later. And I just, and part of what he's asking for is equitable relief, which he certainly doesn't appear to be entitled to. How do you explain his behavior in wanting now to reassert all these rights that he's seemingly abandoned? The, whether the stop time rule is triggered or when it's triggered is separate from the requirement that the DHS's failure to file a compliant, statutorily compliant notice to appear. So you're essentially saying that it's jurisdictional and the court never had any authority to do anything with regard to your client? No, no, Your Honor. I recognize that the court has found that a deficient notice to appear provides jurisdiction on the immigration court. Right. Looking at the regulations. is a basis for the stop time rule. And that's all that, that, that Pereira addressed, right? And all that Ms. Chavez addressed. The, the discrete issue in Pereira and Ms. Chavez was a stop time rule. But in, in analyzing the statutory framework, both Pereira and Ms. Chavez also looked at the in absentia statute and noted that just as with the stop time rule, the in absentia statute, including the rescission of the in absentia order statute, both drawn the same definitional statute in 1229, paragraph A1. And that when a deficient notice to appear, a non-compliant notice to appear, as that term is defined, is filed, that not only does a stop time rule not be triggered, but that the immigration judge, although they have jurisdiction over the proceedings, is also required to rescind the in absentia order. Right. But you didn't exhaust that claim before the BIA, did you? Your rescission claim? Not, the, the claim has changed. Ms. Chavez came out after briefing was completed at, at the BIA. But the argument that the proceedings should, I'm sorry. You could have made that argument based on Pereira. You didn't need Ms. Chavez. The argument that was made to the agency was that because of the defective notice to appear, the proceedings should be of the same kind of vigor as being made now, I guess up to four, debate. But it doesn't change the fact that the immigration judge was required to rescind the notice to appear. This court in Santos, Santos. But if you didn't make the rescission argument, if you didn't exhaust that claim in the BIA, we don't have jurisdiction to entertain it. Because the board has subsequently given us its determination on this issue in matter of lapara, that there's no prejudice to the agency. We already know what the agency thinks. They've issued a published precedential decision on this exact same issue. That decision was issued after the Fifth Circuit reached a contrary result. And then the Ninth Circuit in Singh quickly rejected the, the BIA's atextual reading of the, of the statutory language. But in, in those two cases that you keep going back to, the, the, the alien never appeared for any hearing. And that is just so far removed from what we have here. As, as this court noted in Santos, Santos, that when a defective, a deficient notice to appear is filed, that means the non-citizen hasn't received the, the statutory notice that's required. For purposes of the stop time rule. For purposes of the in absentia statute. Santos, Santos was an in absentia case. And the court found that a defective notice to appear means that 1229 paragraph A1 was not satisfied. But at that time, the court deferred to the agency's two-step notice process that allowed the immigration court to save the DHS from its, its, its repeated failure to follow the law. Nis Chavez rejected that two-step formulation. And that applies with equal force to both the in absentia context and the stop time rule context. Whether, whether or when the stop time rule is triggered in Petitioner's case is distinct from whether the proceedings need to be reopened, whether the in absentia order should be rescinded. And then the agency at that point can determine what relief he's eligible for and whether the, the circumstances of his procedural history, how that impacts discretionary eligibility. Let's talk about, let's assume that, let's put aside your rescission argument. So assume that I think it's not exhausted. I know you disagree, but let's put it aside. If you have to go to equitable tolling, it's clear that we don't have to think about equitable tolling if your motion to reopen can't succeed on the merits, right? So in order to get equitable, I'm sorry, in order to get cancellation of removal, you have to show the tenure's continual presence. You argued about that. But the BIA also said, respondent makes no claim that he could have demonstrated the required exceptional and extremely unusual hardship to a qualifying relative at the time of the last hearing or during the period in which he could have filed a timely motion to reopen. That's an element. You have to show that in order to get cancellation of removal. The BIA said you can't get, you don't meet that element. Did you appeal that? Because I can't find it. And if you didn't, haven't you failed to appeal a dispositive issue? I have a few responses to that. Yeah, I bet you do. Okay, thank you. The motion to reopen to challenge an inabstential order based on lack of notice can be filed at any time. There's no statutory time limit. But in terms of equity. Wait, what? Say that again. Under 1229A paragraph B5C, when there's a lack of notice, a lack of notice under 1229 paragraph A1, that can be filed at any time. There's no 180 day or 90 day deadline. So what lack of notice are you talking about? Yeah. It's a lack of the statutorily required notice. Same as in Nischavez and Pereira, when the Supreme Court looked at 1229A1, they noted that that applies with equal force in the inabstential context and in the stopped temporal context. In the absentia context, that defective notice to appear under 1229A requires rescission of the inabstential order, which the Santos-Santos Court held before then deferred. That's your rescission argument. And then on equitable tolling, while Mr. Nischavez's wife and child were acquired after the entry of the inabstential order, Pereira was such a fundamental change in the laws, as this Court knows, by the number of cases it's received post-2018, raising this issue. That issue, that argument that the stopped temporal was not triggered by a defective notice to appear, just wasn't available. So that's the stopped temporal argument. That's your tenure's continual presence. You've got to show four things to get cancellation. One is tenure's continual presence. You argued that. You said, my continual presence runs the whole time, still probably has a run, because you probably never got an actual one complete notice to appear. You can keep going forever on your theory. But also, you have to show extreme hardship to a qualifying relative. The BIA said you had to show that in that 90-day window. Maybe the BIA is wrong about that. But you didn't say to this Court the BIA was wrong to freeze the time in that 90-day window. You didn't say that at all. I see my time is up, if I may answer the question. Some parts of the cancellation removal provision are subject to the stopped temporal. That's the physical presence. The existence of qualifying relatives or the hardship, that's a continuing part of the application and doesn't have to be shown by a certain point in time. Yes, so now you're telling this Court in oral argument why you think this ruling by the BIA was wrong. They shouldn't have frozen your claim in time. But they did freeze your claim in time and said you lose. And you didn't say to this Court that was wrong. So then that's a dispositive element of the claim for cancellation of removal. So why don't you just, like, isn't that a real problem? And if I may answer, I don't believe so, Your Honor, because the in absentia order is required to be rescinded, regardless of whether there's any eligibility for relief or not. And if upon reopening there's no relief available, then the Court could enter a regular removal order. So you have to win on your rescission argument? Yes, Your Honor. So your equitable tolling argument is just a loser? That was tied into the original argument to rescind the in absentia order to show that Mr. Najia, upon reopening, would be eligible for relief, that he has a U.S. citizen spouse and child, and that the stop time rule wasn't or wouldn't be triggered, and that he, therefore, would be eligible for that relief, and that the Board, if the Board wasn't going to reopen on some other basis, that they should reopen based on this equitable tolling of any filing deadline. And I see my time is up. I'm going to save the remaining time for my final. Thank you. May it please the Court. Good morning. Robert Lundberg for the Attorney General. The Court correctly points out that the Petitioner waived his argument on the equitable tolling, on the substantive finding that he was not statutorily eligible for cancellation in his original proceedings. He's waived that argument, and that is a dispositive finding. The Court cannot consider it. The Court cannot consider his other argument under sua sponte, the BIA's denial of his motion to reopen under its sua sponte authority because it's discretion, and he concedes that in his motion. The Court also correctly points out that he failed to exhaust the notice issue for the in absentia order, but more than failing to exhaust it, he did not file a motion to rescind under the statute. He said that the Court must, or the agency must rescind because he failed to receive sufficient notice, but he didn't argue that before the agency. The statute, 8 U.S.C. 1229A, paragraph B-5, that he's relying on now, that he did not rely on before the agency says such an order may be rescinded only upon a motion to reopen filed at any time if the alien demonstrates that he did not receive notice. He never filed that motion before the agency. He had two avenues of relief. The first was to file a motion to reopen under 1229A, paragraph C-7, and that is the statute that has the 90-day filing window, which he missed. In his motion to the Immigration Court, he relied on that statute, 1229A-C-7. The Immigration Court denied his motion, and in his appeal to the BIA, he again said he wants to reopen under 1229A-C-7. That has nothing to do with rescinding an in absentia order based on lack of notice. So it's not only that he didn't. Can you just, the INA is a very complicated statute, so please help me. So I understand what you just said about 1229A-C-7. That's what he argued that's got the 90-day time. His other avenue, which you say he should have presented to the BIA but did not, is what? That is 1229A-B-5. A-B-5. And that is the statute that says that an in absentia order may be rescinded only upon a motion filed at any time if the alien demonstrates he did not receive notice. I see, and you're saying he never filed a motion saying I didn't receive notice. Correct. He only filed this motion to reopen under 1229A-C-7, which has the 90-day time limit, and he filed that seven years too late. Correct. And so he needs equitable toll. Correct. In fact, the board, in dismissing his appeal, dropped a footnote and said he never mentions lack of notice. So the agency signaled this case isn't about lack of notice. He never raised it. It's only under 1229A-C-7. And then, yeah, okay. So because he waived his argument on the equitable tolling and the fact that he was not statutorily eligible at the time of his original proceedings and because the court cannot consider the agency's alternative but also dispositive sua sponte denial, that's the end of this case, and the court must dismiss his. Okay, but I think what he would say, and tell me if I'm wrong, to your point that he never filed the motion saying I didn't get notice, he would say, well, but I couldn't have because Pereira and Nies-Chavez are watershed rules to go to criminal procedure, and so I couldn't have known that those were out there. I think that's his argument, and your response to that is? We filed two 28-J letters with the court saying that he should have raised those issues at the outset of proceedings, and he essentially forfeited that argument by not raising it. And he could have because the tools were available to him, and that's the Seventh Circuit opinion, I can't remember the name of it, that you filed in your 28-J. That's correct. There are several post-Nies-Chavez published decisions in the Seventh Circuit holding that he forfeited that argument by not raising it, considering it as a claims processing rule. If he had raised that defect before the immigration judge, the immigration judge could have dismissed or should have dismissed if he said he didn't receive a statutorily compliant NTA. But waiting seven years to raise that argument, he has forfeited it. And the chief judge in this circuit, Judge Sutton, wrote an unpublished decision in Kim v. Garland, and that is February 9, 2022. So also post-Nies-Chavez that said you have to raise that argument at the outset of proceedings, otherwise you forfeited it. And it's not just you have to raise it during proceedings, it's at the outset of proceedings the Sixth Circuit held. And in the Seventh Circuit cases, in the 28-J letters that we filed, those were similarly situated folks who wanted to reopen to now request cancellation or removal because the stop time rule would have allowed them to have the ten years physical presence. But as the BIA correctly pointed out, even if you rewind the clock back to his proceedings, he didn't have ten years during proceedings because he entered in 2002 and only had eight years. And even within the window, so if it's told you rewind the clock back, even if Pereira had been issued before that 90-day window, he still would only have nine years and about three days. He did not have a qualifying relative that was expressing the hardship. He had a qualifying relative, but contrary to expressing hardship, she was essentially saying the opposite. So even if the court finds that he exhausted it or treats his motion to reopen under C-7 as a motion under B-5, Ms. Chavez and Pereira do not apply to the in absentia statute. It's telling that in his argument, he doesn't even mention Paragraph 2 under the in absentia statute. The in absentia statute, 8 U.S.C. 1229a, subparagraph B-5a, requires the immigration judge to order an alien removed if they fail to appear at any proceeding, not just the initial proceeding, but at any hearing where he received notice under Paragraph 1 or 2. Paragraph 1 is the NTA, and the government concedes that he did meet his burden to establish that he did not receive notice under Paragraph 1. And that's what Santos-Santos holds, that a subsequent hearing notice does not, quote-unquote, cure the notice defect in the NTA. But there's a second avenue here, and that's under Paragraph 2. The statute's written in the disjunctive, so the government must provide notice either under Paragraph 1 or 2. And if the alien fails to appear at a hearing, and the government establishes that they issued notice under Paragraph 1 or 2, then the immigration judge must order that alien removed if he fails to appear. It's also telling... So that's the government's burden to prove that that notice was, in fact, given... During proceedings, that is the government's burden. And your position is that the government has shown that? Yes. And part of that would be because he did show up at various hearings. Yes, Your Honor. There were five hearing notices that followed the NTA. Those were personally served on him or his counsel at those hearings. He had notice of those hearings, and he attended those hearings. It was that last hearing that he didn't attend, and there was a hearing notice that told him the date and time, November 3, 2010. He received that notice. That notice is valid under Paragraph 2 because it has the date and time, the place, and a warning for the consequences for failure to appear. And under Paragraph 2, that's all that's required in that hearing notice. So he was served with a statutorily compliant notice under Paragraph 2. He failed to appear. And then the burden shifts to him once that in absentia order is rescinded. He must prove that he didn't receive notice under both 1 and 2, whatever is appropriate for that hearing. So because it was a subsequent hearing notice, the fifth hearing notice in this case, he has to prove that he didn't receive notice of that hearing, and that's the only hearing that matters for purposes of this statute. And he met his burden to show that he didn't receive notice under Paragraph 1, but he fails to meet his burden to show that he did not receive notice under Paragraph 2. And like I said, it's telling he doesn't want to discuss Paragraph 2 because that's what this case turns on. It's also telling that in his briefing, he alters the language of Paragraph 2 in two places in his opening brief and then another place in his reply brief. And I would draw the Court's attention to the reply brief at page 8. He says, that statute, referring to 1229A2, that statute permits the issuance of a notice of change in time or place of proceedings and it applies only in the case of a change or postponement in the time and place of such proceedings. The statute reads, in the case of any change or postponement, Now, he does put that A in brackets to signal that he altered that word, but it begs the question, why alter that word? And it's clear from the context of that sentence, it only works if you remove the word any. It's also significant that the dicta in Pereira that he relies on, and that's at page 9 of his reply brief, the majority in Pereira, in dicta, says, it does the same thing. It removes that word any. It says, by allowing for a change or postponement of the proceedings to a new time or place, Paragraph 2 presumes that the government has already served a notice to appear under Section 1229A. So it only works if you ignore that word any. Can I just ask a question? So this argument, I mean, maybe you have the better argument, but all of that, we don't have to get there if we think he didn't exhaust his rescission claim before the BIA, correct? That's our position, that the court can't get there. We can't get there. He didn't exhaust it, and he never even filed that motion. He didn't file the right motion, so he didn't exhaust this claim. So this statutory construction argument, you might be right, you might not be right, but your position is we don't even have jurisdiction to decide that. That's correct. But if the court does, the board's decision in La Parra provides a roadmap. I won't restate it here. Oh, yeah. He thinks La Parra favors him. Can you explain that? I can't explain why he thinks it favors him. Well, he thinks it favors him in the exhaustion argument. He says, it doesn't matter that I didn't raise it before the board because the board has spoken on the issue, so we know what they would have said. But La Parra was issued after he filed his appeal brief to the board, so that doesn't help him. Yeah. In the cases he cites in his reply brief, saying it doesn't matter because the board sua sponte considered an issue, in those cases the board sua sponte considered issues in those cases. He's saying that the board sua sponte considered this notice issue in a separate case, and therefore his exhaustion is satisfied, and that just doesn't work. So I'll just say briefly, the hearing that matters was November 3, 2010. He failed to appear at that hearing and was ordered removed in absentia. Before that hearing, he received a notice of hearing, and that hearing is statutory compliant because it provided a new date and time from the hearing before. So it complies with the statute under Paragraph 2, and I would say that if the court does consider it, we would ask the court to correct the error that's being raised in the cases he cites in Rodriguez in the Fifth Circuit. The board in La Para pointed out that they essentially truncate or misstate that Paragraph 2 argument, but Santos Santos logically, and in one paragraph, considers how those statutes work together. So with Santos Santos, it's good law, it survives Ms. Chavez. That case, paired with La Para, provides the roadmap for dismissing on the notice issue. And I'll give back the rest of my time if there are no more questions. Thank you. Thank you, Your Honors. To address the A2 issue first, the court in Valadez-Lara noted that in the rescission statute, which is B5C, the word or could indicate or does indicate that as long as there's deficient notice under either A1 or A2, that's sufficient to require rescission in an absentia order, but then allowing a hearing notice to cure the defect in A1, which we know through Ms. Chavez is no longer valid. But as Pereira noted in interpreting and looking at A2, there can't be a change in a time and place of a notice to appear or a new notice to appear if there was never a valid A1 notice to appear. So A2 is only implicated if A1 is satisfied by the DHS. The agency failed to acknowledge the unopposed nature of the motion to reopen that Mr. Najai filed, both with the immigration judge and then in the unopposed appeal that he filed to the board. The DHS, consistent with its prosecutorial discretion guidelines, did not oppose or respond to either his motion or his appeal. They say they're not enforceable. We can't enforce prosecutorial discretion. We're not asking that it be enforced, but it's a significant factor that the agency completely failed to mention that the unopposed nature, the DHS's failure to, non-opposition or failure to file a response to the motion to reopen, means that the motion was unopposed. That critical factor wasn't mentioned either by the immigration judge or the board. And it's something that is certainly an important factor in whether both parties agree on an issue or not. Loparro, although Loparro disagreed with the Fifth Circuit's decision in Rodriguez following Loparro's issue, the Fifth Circuit considered Rodriguez en banc and declined to hear that decision en banc, affirming its original ruling, which has since been adopted by the Ninth Circuit. And finally, just to address the claims processing and forfeiture issues, that's a framework that's unique to the Seventh Circuit and is not one that's ever been adopted in the Sixth Circuit, that an important right like this could be waived or forfeited, especially in the statutory framework that we have. If you had the tools to bring the argument, which obviously, I mean, Mr. Pereira made the argument without Pereira, and Nis Chavez made the argument without Nis Chavez. In Santos Santos, the alien, the non-citizen in that case, didn't raise that issue until filing a motion to rescind his removal order after Pereira. He never, just like Mr. Najai, he never raised that argument below. And the Court didn't find that that argument had been waived or forfeited as a claims processing rule. Was that brought to the Court's attention? I mean, did the Court rule that that sort of claims processing rule does not apply? It wasn't addressed in that decision or in any other circuit. And it's a useful framework, I think, if someone is arguing a lack of jurisdiction over the proceedings in its entirety, that that argument has to be made early on in the proceedings. But these issues with an in absentia order or with a stop time rule are not ones that any other court or any other circuit has found to be so limited. I see my time is up. Thank you. Out of time for a while. Thank you. And the case is submitted.